[No. G019497. Fourth Dist., Div. Three. Mar. 24, 1997.]

KENNETH J. CAMARENA, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DEPARTMENT OF FOOD AND AGRICULTURE, Real Party in Interest.

## COUNSEL

David P. Koppelman for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

K. William Curtis, Kenneth R. Hulse and Linda A. Mayhew for Real Party in Interest.

## OPINION

SONENSHINE, J.—Kenneth J. Camarena appeals from a superior court judgment denying his petition for writ of mandate in a case arising out of Camarena's disciplinary discharge from his employment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Camarena was an employee of the California Department of Food and Agriculture (DFA). He was a maintenance mechanic in charge of the mechanic shop at the 32d District Agricultural Association (DAA) Orange County Fair. On February 18, 1992, he gave a new 121-volt battery owned by the fair to a coworker, Fernando Esquivel, for Esquivel's personal use. At the same time, Esquivel gave Camarena $10. The fair's management learned about the transaction from Albert Aguirre, Camarena's assistant, and asked the Orange County Sheriff's Department to investigate.

On June 6, Esquivel was notified of a five-day suspension for misuse of state property. A few days later, Camarena threatened Aguirre, waving a document in his face, calling him a "rat," and making a throat-slashing gesture. And on June 20, he pretended to point a gun at Aguirre as the two crossed paths in the parking lot. Believing Camarena wanted to kill him, Aguirre reported the threats to a coworker and to law enforcement officials.

On June 24, consistent with DFA procedures, Norman Bartosik, DAA's secretary-manager of the fair, signed a notice of adverse action against

Camarena, advising him of his discharge based on dishonesty, misuse of state property and threats against Aguirre. Camarena immediately filed a notice of disciplinary appeal.

The administrative law judge (ALJ) upheld Camarena's discharge, finding the three bases for the adverse action were established by a preponderance of evidence. He further found even though DAA was not Camarena's employer, its fair manager, Bartosik, had authority to act as DFA's agent, and DFA properly delegated the authority. Concurring with these findings, the State Personnel Board (the board) adopted the ALJ's proposed decision.

Camarena petitioned for writ of mandate in the superior court, seeking reinstatement with backpay and restoration of all benefits. For reasons not relevant to the appeal, the court initially granted the petition, but then recalled the writ order. Upon reconsideration, it entered a judgment denying the writ.

### DISCUSSION

Camarena advances two theories for reversal of the judgment: He contends his termination was invalid because Bartosik was unauthorized to sign the notice of adverse action, and there is insufficient evidence to support the finding he engaged in the conduct upon which his discharge was based. Neither argument has merit.

### *Standard of Review*

We apply the substantial evidence test in reviewing a decision of the board. (*Flowers* v. *State Personnel Bd.* (1985) 174 Cal.App.3d 753, 758 [220 Cal.Rptr. 139].) We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the board's decision. Its findings come before us "with a strong presumption as to their correctness and regularity." (*Pereyda* v. *State Personnel Board* (1971) 15 Cal.App.3d 47, 50 [92 Cal.Rptr. 746].) We do not substitute our own judgment if the board's decision " ' "is one which could have been made by reasonable people. . . ." [Citation.]' " (*Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865, 870 [130 Cal.Rptr. 292].) Moreover, we give great deference to the agency's interpretation of statutes affecting issues within the its administrative sphere. (*Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743] ["We have generally accorded respect to administrative interpretations of a law and, unless clearly erroneous, have deemed them significant factors in ascertaining statutory meaning and purpose"].)

## I

■ Camarena argues a notice of adverse action is ineffective unless signed by an authorized person. He claims the DAA could not fire him because it is not a state agency and is without statutory power to discipline a state employee; he further contends DFA could not delegate its disciplinary authority to the DAA. He is wrong.

In reviewing disciplinary actions, the board must necessarily interpret, enforce and administer the Civil Service Act, Government Code section 18500 et seq. (All statutory references are to the Government Code unless otherwise stated.) In deciding whether the DAA had the power to terminate Camarena, the board interpreted section 19574, which states, in pertinent part, "The appointing power [here, DFA], or its authorized representative, may take adverse action against an employee."

Camarena insists the word "authorized" means "statutorily authorized." DFA contends Camarena's interpretation is inconsistent with the clear language of the statute. Moreover, it argues, the board's interpretation of section 19574 as authorizing DFA to delegate the authority for bringing an adverse action comports with the statute's plain language and harmonizes with the Civil Service Act as a whole. We agree.

In the first place, we cannot adopt Camarena's interpretation because we would have to rewrite the statute to read, "The appointing power, or *a statutorily*-authorized representative, may take adverse action against an employee." But in construing a statute, we "cannot create exceptions, contravene plain meaning, insert what is omitted, omit what is inserted, or rewrite the statute." (*San Francisco Unified School Dist.* v. *San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146, 149 [272 Cal.Rptr. 38].)

In the second place, statutes are to be construed in the context of the whole body of laws of which they are a part. (*San Francisco Unified School Dist.* v. *San Francisco Classroom Teachers Assn., supra,* 222 Cal.App.3d at p. 150.) Section 19574 must be read to harmonize with section 18572, which gives the DFA virtually unrestricted power to delegate its authority to take disciplinary action. Section 18572 provides, "Whenever a power is granted or a duty imposed upon an appointing power, the power may be exercised or the duty performed by a deputy of the appointing power or by a person authorized pursuant to law by him [or her], unless it is expressly otherwise provided." Clearly, DFA, the appointing power, may delegate the duty of executing adverse actions to the fair manager because no law expressly prohibits such delegation.

Indeed, DFA's formal guidelines and protocols specifically provide for delegation of authority to the fair manager to implement and execute formal adverse actions. DFA's "1989 Supervisor's Guide to Employee Conduct and Discipline" sets forth the fair manager's responsibility for reviewing all documentation regarding adverse action and signing the notice. Of course, pursuant to powers and duties defined in the Food and Agriculture Code, DFA reserves the right to review adverse actions to ensure their conformance to agency practices. And DFA retains the right to consent to the DAA's delegating implementation of management policies to the fair manager.

We need not discuss the plethora of cases cited by Camarena to prove his point. Without exception, they involve distinguishable factual situations or legal issues having no bearing on the validity of the authority delegated to and exercised by the fair manager here. Likewise, Camarena misconstrues the statutes upon which he relies. He has no legitimate basis for his claim his discharge was procedurally flawed.

Endorsing the conclusion of the board, the superior court found, "The signing of a Notice of Adverse Action by a Fair Manager does not invalidate the disciplinary action taken against a maintenance worker working at the 32nd District Agricultural Association." Not only was that finding correct, any other finding would have been clearly erroneous.

## II

Camarena's only other challenge to the judgment is insufficiency of evidence. He argues the testimony of witnesses against him was not credible and "the overwhelming weight of evidence" established he simply loaned the battery to Esquivel who, coincidentally, loaned Camarena $10 to buy lunch that day. We remind Camarena we do not assess credibility or reweigh the evidence, so his arguments about the battery incident are of no avail. There were witnesses who testified not only to the transaction involving the exchange of the battery and the $10, but to a history of missing items from the mechanic shop under Camarena's watch. The evidence and inferences provide a legally sufficient basis for establishing Camarena's misuse of property owned by the fair.

Moreover, Camarena does not attack, and thus concedes, the proof of his harassing and intimidating conduct toward Aguirre which, as DFA notes, provides a sufficient basis for dismissal under section 19572, subdivision (t) —"Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the appointing authority or the persons' employment." The conduct was clearly related to Camarena's

performance of his job duties and affected Aguirre's ability to perform his duties as Camarena's assistant: Aguirre feared for his life. (See, e.g., *Stanton v. State Personnel Board* (1980) 105 Cal.App.3d 729, 739 [164 Cal.Rptr. 557] [the test under subdivision (t) is "whether (1) there is a connection between the offensive conduct and the employee's duties, and (2) whether the uttered threats would risk impairment or disruption of public services"].) As the ALJ noted in his decision, "[T]hese implied death threats are management's primary reasons for [Camarena's] dismissal."

On this record, the superior court properly found, "There is substantial evidence to support Respondent State Personnel Board's finding that petitioner had engaged in the conduct with which he was charged in the underlying adverse action."

The judgment is affirmed. DFA shall recover its costs on appeal.

Wallin, Acting P. J., and Rylaarsdam, J., concurred.