[No. C044329. Third Dist. Sept. 3, 2004.]

CALIFORNIA DEPARTMENT OF CORRECTIONS, Plaintiff and
Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DIANNA HENNING, Real Party in Interest and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of Part II.B. of the DISCUSSION.

**1604**

**COUNSEL**

Linda D. Buzzini, Warren C. Stracener and Christopher E. Thomas for Plaintiff and Appellant.

Elise S. Rose and Karen J. Brandt for Defendant and Respondent.

Law Offices of Richard K. Werner and Richard K. Werner for Real Party in Interest and Appellant.

## OPINION

**SIMS, J.**—Real party in interest Dianna Henning, a public employee under the State Civil Service Act or SCSA (Gov. Code, § 18500 et seq.),[1] sought from her employer, California Department of Corrections (CDC), reasonable accommodation of a disability (asthma).[2] CDC denied her request for reasonable accommodation and instead medically demoted Henning. (§ 19253.5.) The State Personnel Board (SPB) issued a precedential decision in favor of Henning. (*In re Henning* (2001) SPB Dec. No. 01-01.) CDC filed a petition for writ of administrative mandamus. (Code Civ. Proc., § 1094.5.)

CDC appeals from the trial court judgment insofar as it denied CDC's petition. CDC contends (1) SPB erroneously construed the medical demotion statute as imposing a requirement on the employer to engage the employee in an "interactive process," and (2) SPB improperly concluded CDC had failed to engage adequately in an interactive process.

Henning cross-appeals from the trial court's ruling that SPB erred in applying the current statutory definition of disability rather than the statutory definition in effect at the time of CDC's actions with respect to Henning's request for reasonable accommodation.

We shall affirm the judgment.[3]

### FACTUAL AND PROCEDURAL BACKGROUND

In October 1993, Henning— who has had asthma all her life—began working as Institution Artist/Facilitator (IAF) for the Arts-In-Corrections (AIC) program at the California Correctional Center (CCC) in Susanville. Her duties included teaching some art classes, administering the program, hiring and supervising contract artists who taught classes, overseeing inmate

---

[1] Undesignated statutory references are to the Government Code.

[2] Henning's request appears to have been based on section 19230, subdivision (c), which provides in part: "It is the policy of this state that a department, agency, or commission shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee who is an individual with a disability, unless the hiring authority can demonstrate that the accommodation would impose an undue hardship on the operation of its program."

[3] We grant SPB's March 4, 2004, request for judicial notice of precedential SPB decisions. We also grant SPB's "Second Request" for judicial notice, also filed March 4, 2004, which sought judicial notice of the SPB precedential decision that is the subject of this appeal. (*In re Henning, supra,* SPB Dec. No. 01-01.)

SPB has filed a brief in this appeal, defending its application of the definition of disability and its determination that CDC was required to engage in an interactive process with Henning before demoting her.

workers assigned to assist with the classes, and purchasing, inventorying and securing the tools used in the program. She worked in the art studio located within a building that also contained the prison's dry-cleaning facility. A solid wall with a door divides the two facilities, which have separate air filtration systems. The art studio is a large room, within which there are a small separate computer room and the IAF's office, the walls of which are made of transparent plexiglass.

In May 1997, Henning said a foul odor in the studio was making her dizzy. CCC concluded the odor came from a clogged sink trap and instructed Henning to keep it clear by regularly pouring water down the sink, which she did.

In November 1997, Henning and two contract artists expressed to prison officials concern about the air quality in the studio. There was no evidence of response by CDC.

In December 1997, perchloroethylene (an organic solvent) was spilled in the adjacent dry-cleaning facility. The spill was cleaned up immediately, but Henning complained the fumes triggered a serious asthma attack for which she required prednisone.

In January 1998, Henning filed a workers' compensation claim.

Henning's asthma worsened, and her doctor, Dr. John Dozier, excused her from work for several weeks beginning February 13, 1998. On March 2, 1998, Dr. Dozier released her to return to work, on the condition she not work near the dry cleaning facility.

Since Henning could not work in the art studio, CCC temporarily reassigned her to the mailroom, but she did not like the assignment.

Henning asked CCC to order a high efficiency particulate air filter (HEPA filter) for her office, let her bring in her own filter in the interim, and switch her office with the computer room within the art studio. CCC granted her requests. CCC purchased a HEPA filter in April 1998, but it did not arrive until after Henning left her job in May 1998. As found by SPB, there was no evidence Henning ever switched her office with the computer room.

In connection with Henning's workers' compensation claim, a certified industrial hygienist inspected the air quality in the art studio on March 30 and 31, 1998. He made suggestions to improve the air quality, which were

implemented by CCC. He issued a final report on April 29, 1998, attesting the air was considered safe by the California Occupational Safety and Health Act's (Lab. Code, § 6300 et seq. (Cal-OSHA)) standards, and there was no reason why anyone should have problems with the air quality in the studio.

Henning returned to work on May 4, 1998, but left on May 6, claiming she felt sick once again. She worked from home for a while. After being told she could no longer work from home, she never returned to work and ultimately retired in 2000.

In June 1998, CDC was forced to stop the AIC program due to Henning's absence. Shortly thereafter, Cal-OSHA officials performed a surprise inspection, which found the art studio was in compliance with Cal-OSHA's air quality standards.

On July 15, 1998, CDC's return-to-work coordinator, Cheryl Gaither, sent Henning an "options" letter, advising there were some options Henning could elect, some options she could request, and some steps the employer was mandated to take regarding her employment. She could elect resignation, service retirement, disability retirement, or demotion. She could request leave or reasonable accommodation. The letter also stated that if Henning was unable to work in her present classification, CDC would pursue a medical demotion to another position, and, "You are encouraged to participate in this process. You will be provided with a list of currently vacant suitable job opportunities review [sic]. You may indicate which positions you are interested in, and, you will be given an opportunity to demonstrate your qualifications for those positions. CDC will make an effort to place you in the highest paying vacant position for which you are qualified, which is not promotional and which meets your medical restrictions. If you do not choose to participate in this medical demotion process, you will be assigned to a currently vacant position for which our records indicate you are minimally qualified which is closest to your current salary." The letter ended with, "Please notify [CDC's] Return To Work Coordinator . . . of your decisions and preferences within ten days of receipt of this letter."

Henning did not contact the coordinator concerning the options letter but did file a request for reasonable accommodation a week or two later (as found by SPB), in which she identified her limitation and the requested accommodation as follows: "May not work in an area where there is heavy dust & dry-cleaning chemicals. A satellite office would be a viable option or moving AIC to the Lassen Unit."

CDC's coordinator sent Henning's request to the main office and kept in touch with Dr. Dozier, but did not contact Henning or send her the vacancy

list promised in the options letter. As stated in the SPB decision, the coordinator felt Henning had made her choice by submitting the request for reasonable accommodation and did not want to participate in the medical demotion process.[4]

On April 13, 1999, CDC denied Henning's request for reasonable accommodation. The letter to Henning stated CCC had received medical verification from her doctor that she "cannot work in the current location of the [AIC] Program. Therefore, [CCC] has provided you with an opportunity to continue your employment with [CDC] in the position of a Business Services Officer I [BSO I]." The letter said CDC could not accommodate the modifications she requested because: (1) providing a satellite office would significantly limit the essential functions of her job as IAF; (2) CCC was not equipped with a space large enough to move the IAF's office or use as a satellite office; (3) Cal-OSHA and an industrial hygienist had concluded Henning's work area was a safe and healthy work environment; and (4) a medical report stated her asthma was not of an industrial nature and her medical condition would exist regardless of where her work area was located.

Before sending the April 1999 denial of the request for reasonable accommodation, CDC began processing the medical demotion referenced in its July 1998 options letter. In February 1999, CDC's return to work coordinator obtained a list of vacancies at CCC to determine an alternative position for Henning. The coordinator obtained only a CCC vacancy list, because she assumed Henning would not wish to move from the area. The coordinator reviewed the list without sending it to Henning and ultimately chose to demote Henning to the position of BSO I, because it was the closest in salary. The IAF salary was about $3,838 per month, including $400 for supervising inmates. The BSO I salary was $3,619 per month.

On February 5, 1999, CDC served Henning with a notice of medical demotion, demoting her to BSO I, because "your June 1997 non-industrial injury precludes your continued employment as an Institution Artist Facilitator."

On March 2, 1999, Henning's doctor informed CDC that Henning was physically able to return to work on March 19 in the administration building.

---

[4] The coordinator testified regarding the letter's promise to provide a list of vacancies as follows: "That is if she participates voluntarily in the process. Because she elected reasonable accommodation, she did not elect to this process. Therefore, when a reasonable accommodation is denied, for whatever basis, this is one of the options the [CCC] has to take without having to go, without it having to be a voluntary process." The coordinator testified she never gave the vacancy list to Henning because Henning "never asked me for it" and "did not voluntarily opt this option."

Henning did not return to work but instead submitted another letter from her doctor on April 13, explaining she was not physically able to work at all until July 3, 1999, and was excused as "fully disabled" until then. Since then, there is no evidence that Henning's doctor has released her to work, or that she has attempted to return to work. Since leaving CCC, Henning has worked intermittently as a teacher in various schools.

Henning pursued an administrative appeal from the medical demotion and denial of reasonable accommodation.

In May 2000, following an administrative hearing, an administrative law judge (ALJ) issued a proposed decision to uphold CDC's actions.

SPB rejected the ALJ's proposed decision and heard the matter itself.

In April 2001, SPB issued its decision, designated a "Precedential" decision as authorized by section 19582.5. (*In re Henning, supra,* SPB Dec. No. 01-01.) SPB concluded Henning was a qualified individual with a disability (because her asthma "limit[ed]" her ability to participate in major life activities) and was therefore entitled to reasonable accommodation. While she was not entitled to the two particular accommodations she requested, CDC was obligated to engage her in an interactive process. CDC initially engaged in an interactive process but ceased to communicate after Henning filed her formal request for accommodation. SPB said, "Had [CDC] contacted [Henning] and explained in a timely manner why it would not be granting the reasonable accommodations she requested and fully explored remaining alternatives with her, it is possible that the parties would have been able to find a solution to meet both their needs." In a footnote, SPB suggested alternatives such as filtering the air in the entire studio as opposed to her office only, transferring her to another position, or transferring her to a different institution. SPB accordingly granted the appeal "only to the extent that the parties are required to engage in an interactive process to determine whether [Henning] can otherwise be reasonably accommodated."

As to Henning's appeal from the medical demotion, SPB concluded section 19253.5[5] "similarly requires that state agencies engage in an interactive

---

[5] Section 19253.5, subdivision (c) provides in part: "(c) When the appointing power, after considering the conclusions of the medical examination *and other pertinent information,* concludes that the employee is unable to perform the work of his or her present position, but is able to perform the work of another position including one of less than full time, the appointing power may demote or transfer the employee to such a position." (Italics added.)

In lieu of a medical examination by a doctor designated by the employer (as authorized in subdivision (a) of section 19253.5), the employer may rely upon medical reports submitted by the employee. (§ 19253.5, subd. (e).)

process with an employee, regardless of the employee's disability status, before invoking a medical demotion, transfer or termination. [CDC] failed to participate in such a process with [Henning] before medically demoting her and, thus, we [SPB] revoke the medical demotion." SPB said, "[CDC] promised [Henning] it would send her a list of vacancies to solicit her input and failed to do so. Therefore, [CDC] is estopped to deny that [Henning] was not [*sic*] entitled to participate in the process of selecting an alternative position. If [the return to work coordinator] had ·sent [Henning] a list of vacancies for her input and [Henning] had failed to respond, the interactive process requirement would likely have been fulfilled." If the parties could not agree after engaging in an interactive process, CDC could still demote Henning, and she could appeal.

In August 2002, CDC filed in the trial court a petition for writ of administrative mandamus.

On June 16, 2003, the trial court issued a judgment granting the petition in part and denying it in part. The court concluded, in CDC's favor, that SPB used the wrong legal standard for determining whether Henning qualified as disabled for reasonable accommodation purposes. SPB erred in applying the current statute (defining disability as "limit[ing]" a major life activity) rather than the statute in effect at the time of CDC's actions (which defined disability as "substantially limit[ing]" a major life activity). The court also concluded SPB erroneously failed to consider appropriate mitigation measures, e.g., medication devices, in determining whether Henning qualified as disabled. The court directed SPB upon remand to reassess the case under the appropriate standards.

The trial court nevertheless concluded SPB did not abuse its discretion in finding CDC failed to engage adequately in the interactive process relative to the reasonable accommodation case.

Finally, the judgment stated SPB did not abuse its discretion in determining that the "other pertinent information" language in the medical demotion statute, section 19253.5, requires the employer to engage the employee in an interactive process.

The judgment accordingly (1) ordered issuance of a writ of mandamus remanding the case to SPB to rewrite its decision applying the proper legal standard for disability; and (2) stated the writ petition was otherwise denied.

The writ was issued on June 17, 2003.

CDC filed a notice of appeal, stating it was appealing from the entire judgment, except that portion of the judgment granting its writ petition.

Henning filed a notice of cross-appeal from the judgment.

## DISCUSSION

### I. *Standard of Review*

"In reviewing a decision of [SPB] on a petition for administrative mandamus, we stand in the same shoes as the trial court, applying the substantial evidence rule." (*Kuhn v. Dept. of General Services* (1994) 22 Cal.App.4th 1627, 1632 [29 Cal.Rptr.2d 191].) "We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the board's decision." (*Camarena v. State Personnel Bd.* (1997) 54 Cal.App.4th 698, 701 [62 Cal.Rptr.2d 775] .)

Insofar as the appeal from the administrative mandamus proceeding presents questions of law, our review is de novo. (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404 [107 Cal.Rptr.2d 39].)

We respect but do not necessarily defer to SPB's interpretations of the governing statutes. (*Kuhn v. Department of General Services, supra*, 22 Cal.App.4th 1627, 1639 [we apply a " 'respectful but nondeferential standard of review' " to SPB interpretations of governing statutes].) The judiciary takes ultimate responsibility for the construction of statutes, although according great weight and respect to the administrative construction such as is appropriate under the circumstances. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7, 11–13 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*).)

### II. *CDC's Appeal*

#### A. *Statutory Construction*—"Other Pertinent Information"

CDC contends SPB erred by writing into the medical demotion statute (§ 19253.5) a requirement that the employer must engage in an interactive process with the employee. We shall conclude CDC's appeal on this point lacks merit.[6]

---

[6] On appeal, Henning claims, "SPB did *not add* the additional requirement of interactive process to the medical demotion action by the CDC. They [*sic*] simply concluded that had the interactive process been followed, the medical demotion would not have been necessary and therefore was improper." Henning misstates the record. SPB's decision expressly stated, "we construe section 19253.5 [the medical demotion statute] to require departments to engage employees in the same interactive process already required for disabled employees [fn. omitted] in order to seek out 'other pertinent information' that may be relevant to their decision-making process before invoking a medical action."

 California Constitution, article VII, section 3, subdivision (a), provides: "The board [SPB] shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions." SPB must necessarily interpret, enforce, and administer the SCSA, section 18500 et sequitur. (*Camarena v. State Personnel Bd., supra*, 54 Cal.App.4th 698, 702.)

It is appropriate in this case to give great weight to SPB's interpretation of section 19253.5, because (1) SPB is constitutionally empowered to "enforce the civil service statutes" (Cal. Const., art. VII, § 3, subd. (a)); (2) SPB has expertise and familiarity with satellite legal issues; and (3) this record reflects careful consideration of the issue by SPB. (*Yamaha, supra*, 19 Cal.4th 1, 11–13.)

As indicated, section 19253.5 provides in part: "(c) When the appointing power, after considering the conclusions of the medical examination *and other pertinent information*, concludes that the employee is unable to perform the work of his or her present position, but is able to perform the work of another position including one of less than full time, the appointing power may demote or transfer the employee to such a position." (Italics added.)

CDC argues SPB impermissibly rewrote section 19253.5 to add an "interactive process" requirement. We disagree.

SPB simply construed "other pertinent information" to include the employee's thoughts about whether she should be reassigned and to what position she should be reassigned. SPB construed the statute as affirmatively requiring the employer to seek out the employee's views, as opposed to mere passive consideration of unsolicited input from the employee. The interactive process is simply the vehicle for obtaining this information. As stated by SPB: "Without seeking input from the affected employee as to his or her needs or desires, a department taking a medical action under section 19253.5 will not have the information necessary to consider the impact on the employee of the action contemplated. Unlike an adverse action, a medical action under section [19253.5] is not disciplinary in nature. Rather, it is a vehicle that allows departments to reassign employees to other positions when they are physically or mentally unable to perform the duties of their current position, until such time as they are once again able to perform the duties. As we stated in our decision in *Gerardo Manriquez* [(*In re Manriquez* (1997) SPB Dec. No. 97-05 (*Manriquez*)], section 19253.5 must be construed as imposing an affirmative obligation on departments to attempt to minimize the impact of a medical disability on an employee's job status. While the financial impact of a demotion may be paramount to most employees, for other employees financial impact may not be the only consideration. Thus, we construe section

19253.5 to require departments to engage employees in the same interactive process already required for disabled employees in order to seek out 'other pertinent information' that may be relevant to their decision-making process before invoking a medical action." (Fns. omitted.)

■ SPB's interpretation is reasonable. An obligation actively to solicit the employee's views is within the scope of the statutory language that the employer may demote an employee only " after considering the conclusions of the medical examination and other pertinent information." (§ 19253.5, subd. (c).)

■ CDC argues SPB erred in construing "other pertinent information" to include the employee's thoughts. CDC invokes the maxim of *ejusdem generis*, that when general words follow the enumeration of particular things, the general words will be construed as applicable only to things of the same general nature as those enumerated. CDC cites *Nakamura v. Superior Court* (2000) 83 Cal.App.4th 825, 834 [100 Cal.Rptr.2d 97], that the reasoning behind this rule is the Legislature would not have mentioned the particular thing if it intended the general words to be used in an unrestricted sense, because that would render the particular item surplusage. According to CDC, the general words "other pertinent information" should only include items in the same general class as "conclusions of the medical examination." However, the maxim of *ejusdem generis*, as indicated, applies where a general term follows an enumeration of particulars. For example, *Nakamura* construed a statute prohibiting recovery of " 'non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages.' " (*Id.* at p. 833, italics omitted.) Here, there is no enumeration, no list of particulars. There are just "conclusions of the medical examination." Moreover, even if the maxim applied here, CDC acknowledges "other pertinent information" would include statements by the employee relating to his or her ability to perform the job. Thus, the employer would still be required to engage the employee in an interaction.

CDC gets caught up on the term "interactive process." CDC argues the statute makes no express reference to "interactive process." CDC further argues that, because the "interactive process" language *is* used in the Fair Employment and Housing Act (FEHA) (§ 12940, subd. (n) [unlawful for employer to fail to engage in interactive process to determine reasonable accommodation]), the omission of the words "interactive process" from the medical demotion statute (§ 19253.5) means medical demotions do not require an interactive process. CDC criticizes SPB's statement that it makes little sense to engage employees in an interactive process for reasonable accommodation purposes but not for medical demotion purposes. CDC argues the Legislature could not have intended "other pertinent information" to

mandate an "interactive process," because the words "other pertinent information" existed in the statute long before the term "interactive process" became a part of disability law.

■ We recognize the term "interactive process" may be a term of art in contexts such as the FEHA. However, insofar as the term generically expresses the principle of eliciting an employee's views, it is not a patented concept. We need not decide whether the term "interactive process" must have identical meaning in all employment contexts. Whatever the parameters of "interactive process," the principle of engaging the employee was clearly violated here where CDC failed to fulfill its promise to give Henning a list of vacant positions, to get her input before demoting her.

We disagree with CDC's assertion that this case tracks our opinion in *Kuhn v. Department of General Services, supra,* 22 Cal.App.4th 1627, where we rejected SPB's interpretation of a different part of the medical demotion statute—section 19253.5, subdivision (h)—which accords reinstatement rights to demoted employees, subject to satisfactory completion of a "new probationary period." We rejected SPB's interpretation that the phrase "new probationary period" in section 19253.5, subdivision (h), meant a "medical probationary period" (entitling the employee to further reinstatement rights) as opposed to a regular civil service probationary period. We said "medical probation" was not a term reflected in the statute. (22 Cal.App.4th at p. 1638.) Applying a " 'respectful but nondeferential standard of review' " to SPB's interpretation of the statute, we said SPB had no authority to fashion a hybrid civil service classification or to enlarge statutes in the guise of interpretation. (*Id.* at pp. 1638–1639.) *Kuhn* does not help CDC because, in this case, SPB has not overstepped its bounds.

CDC complains *Manriquez, supra,* SPB Dec. No. 97-05, at page 19 (the SPB precedent cited by SPB), merely declared, in discussing the medical demotion statute, that "[i]n engaging in such a process, the department would, *ideally,* meet with the affected individual to determine all available positions within his or her medical limitations." (Italics added.) CDC argues that, because *Manriquez* said, "ideally," the interactive process cannot be mandatory. CDC says it could reasonably have relied upon *Manriquez.* However, CDC does not say it *did* rely upon *Manriquez,* nor does CDC cite any evidence in the record demonstrating such reliance. Moreover, the *Manriquez* quote cited by CDC did not say the interactive process was an ideal, but rather that the employer would ideally meet with the employee.

■ CDC next argues SPB's interpretation of section 19253.5, subdivision (c), is undermined by the absence of the words "other pertinent information" from section 19253.5, subdivision (e), which provides: "The appointing

power may demote, transfer, or terminate an employee under this section without requiring the employee to submit to a medical examination when the appointing power relies upon a written statement submitted to the appointing power by the employee as to the employee's condition or upon medical reports submitted to the appointing power by the employee." According to CDC, subdivision (e) creates a separate procedure for medical demotions based on medical reports produced by the employee (as was the case here) as opposed to medical examinations by employer-designated doctors. We disagree. Subdivision (e) merely allows an employer to use medical reports provided by the employee in lieu of requiring the employee to submit to a medical examination by a doctor designated by the employer (as authorized by subdivision (a) of section 19253.5).

We conclude CDC fails to show any reversible error with respect to SPB's statutory interpretation.

B. *Adequacy of CDC's Efforts*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Henning's Cross-Appeal*

Henning cross-appeals from the trial court's determination that SPB applied the wrong standard of disability with respect to her request for reasonable accommodation. Whereas SPB inquired (under the current version of section 19231) whether Henning had a medical condition that "limit[ed]" a major life activity, the trial court determined the proper test was (under the former version of section 19231 in effect at the time of CDC's actions) whether her condition "substantially limit[ed]" a major life activity. Henning argues SPB correctly applied the current statute. She alternatively argues her condition does substantially limit a major life activity.

■ We shall conclude the trial court was correct. The proper standard is the statute in effect at the time of CDC's actions. For reasons we explain *post*, we will not address Henning's alternative argument.

In our view, this issue does not require that we defer to SPB's decision. (*Yamaha, supra*, 19 Cal.4th 1, 11–13.) We are not reviewing SPB's construction of a statute but rather its decision as to which version of the statute to apply. This implicates general legal principles of prospective-versus- retrospective application of statues.

At the time of CDC's actions, the SCSA defined disability as a "substantial limitation" on a major life activity. Thus, former section 19231 provided, "(a)

*See footnote, *ante*, page 1601.

As used in this article [hiring of disabled persons], the following definitions apply: [¶] (1) 'Individual with a disability' means any individual who (A) has a physical or mental impairment which *substantially limits* one or more of that individual's major life activities . . . . [¶] An individual with a disability is 'substantially limited' if he or she is likely to experience difficulty in securing, retaining, or advancing in employment because of a disability." (Stats. 1992, ch. 913, § 28, p. 4328, italics added.)

By the time SPB decided the case in 2001, section 19231 had been amended in 2000 to its present version, which defines the disabled as "any individual who has a physical or mental disability as defined in [FEHA] Section 12926." (Stats. 2000, ch. 1048, § 1.) In turn, section 12926 (as amended by Stats. 2000, ch. 1049, § 5) defines disability as a disorder or condition that "[l]imits a major life activity." (§ 12926, subd. (k)(1)(B).)

The 2000 legislation (the Poppink Act) that amended both the SCSA and the FEHA, went into effect on January 1, 2001. (Cal. Const., art. IV, § 8; Stats. 2000, ch. 1049, § 1 et seq.; *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1022, 1026 [130 Cal.Rptr.2d 662, 63 P.3d 220] (*Colmenares*).)

" '[I]t is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' " (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585].)

No such intent is demonstrated in this case.

Henning relies on *Colmenares, supra,* 29 Cal.4th 1019, which held that the 2000 amendment of the FEHA applied to an employee who lost his job in 1997, because in the 2000 legislation "the Legislature intended not to make a retroactive change, but only to clarify the degree of limitation required for physical disability under the FEHA." (*Id.* at p. 1028 .)

However, unlike the statute at issue in this case (which had the word "substantially" excised by the Poppink Act), both "before and after passage of the Poppink Act the FEHA's test was 'limits,' not substantial limits."[8] (*Colmenares, supra,* 29 Cal.4th 1019, 1030 [130 Cal.Rptr.2d 662, 63 P.3d 220].) The Supreme Court reviewed the history of the FEHA, noting that (1) the FEHA did not originally define

---

[8] Henning on cross-appeal claims, "FEHA, as it read prior to the 200[0] amendment, defined physical disability as a condition that '*substantially* limits a major life activity.' ([] section 12926(k)(1)(B).) (Emphasis added.)" Henning is wrong. Before the 2000 amendment, the statute did not contain the word "substantially" with respect to limits on major life activity. (Stats. 1999, ch. 592, § 3.7; Stats. 1998, ch. 99, § 1; Stats. 1993, ch. 1214, § 5, p. 6964.)

impairment but a 1980 administrative regulation of the Fair Employment and Housing Commission (FEHC) defined handicap as a "substantial limitation"; (2) federal law (the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA)) used the "substantial limitation" test; (3) a 1992 amendment of the FEHA generally modeled the definition of disability on the ADA, except for the "substantial limitation" test; and (4) the "substantial" qualifier was removed from the FEHC regulation in 1995. (*Colmenares, supra,* 29 Cal.4th at pp. 1024–1027.) *Colmenares* described as dictum a comment in a prior FEHA case, *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1060 [22 Cal.Rptr.2d 287, 856 P.2d 1143], requiring an employee to show his back injury "substantially limited" his ability to work. (*Colmenares, supra,* 29 Cal.4th at p. 1029.)

*Colmenares* noted that "[w]hen the 1992 Legislature made the just-described amendments to the FEHA, it also amended various *non-FEHA* statutes by defining 'disability' in those statutory schemes using the more stringent federal test of 'substantial limits.' Thus, it inserted the federal definition of disability, including the requirement that a disability must substantially limit a major life activity, into provisions prohibiting disability discrimination . . . with respect to state civil service employment ([] § 19231). (Stats. 1992, ch. 913 . . . .) These changes were consistent with the 1992 Legislature's stated intent 'to strengthen California law where it is weaker' than the ADA, that is, in the non-FEHA statutes, 'and to retain California law when it provides more protection for individuals with disabilities than' the ADA, that is, in the FEHA. (Stats. 1992, ch. 913, § 1, p. 4282.)" (*Colmenares, supra,* 29 Cal.4th 1019, 1025–1026.)

The Supreme Court continued: "Not only did the Poppink Act of 2000 leave unchanged the 'limits' test in the FEHA, it also amended other, non-FEHA, statutes to delete the term 'substantial' from the limitation test these statutes had used since 1992. Legislative committee analyses explained that the Poppink Act 'standardizes' the definition of physical disability 'in California civil rights laws, *clarifying* that California's disability protections are broader than federal protections.' . . . Thus, the Poppink act *deleted* from . . . the state civil service scheme ([] § 19231 ) the requirement that a disability must *substantially* limit a major life activity, thereby conforming those statutes to the 'limits' test of the FEHA." (*Colmenares, supra,* 29 Cal.4th 1019, 1027–1028.)

*Colmenares* concluded, "This pattern of Legislative action compels our conclusion that in 2000 the Legislature intended not to make a retroactive change, but only to clarify the degree of limitation required for physical disability *under the FEHA.*" (*Colmenares, supra,* 29 Cal.4th 1019, 1028, italics added.)

Thus, the Poppink Act changed the law in the non-FEHA statutes, including the statute at issue in this appeal, section 19231. The change applies prospectively.

Insofar as Henning views this as a double standard for FEHA and SCSA cases, CDC points out it was Henning who chose not to pursue a claim under the FEHA. (*State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 435, 444 [217 Cal.Rptr. 16, 703 P.2d 354] [FEHA applies to civil service employees, who may pursue remedies under both FEHA and CSCA].)

SPB has filed a brief in this court defending its decision to apply the new statute. SPB notes it is a constitutional agency charged with overseeing the civil service laws. (Cal. Const., art. VII, § 3.) SPB cites the policy of protecting disabled workers, as reflected in the civil service laws. (§§ 19230, 19233.) SPB explains it based its decision on its own precedents in which it stated it would apply definitions of the ADA, FEHA, or SCSA, "whichever were more protective" of the state employee.

■ Of course, the SPB precedents are not binding on this court. (*Yamaha, supra,* 19 Cal.4th 1, 11.)

In the precedential decisions, SPB said the anti-discrimination provision of section 19702[9] (which prohibits discrimination and says the ADA definition of disability will prevail over section 19702's definition if the ADA provides broader protection) reflected an intent to provide state employees with the broadest possible civil rights. However, this policy does not authorize SPB to rewrite section 19231 to ignore its express language. Nor does anyone show how section 19702 applies to this case. Even assuming section 19702 applies to reasonable accommodation cases, section 19702 says the ADA definition of disability will prevail over section 19702's definition if the ADA definition is broader. The ADA definition is not broader with respect to the matter at

---

[9] Section 19702 currently provides: "(a) A person shall not be discriminated against under this part because of sex, race, religious creed, color, national origin, ancestry, marital status, physical disability, or mental disability. . . . [¶] (b) As used in this section, the term 'physical disability' has the definition set forth in Section 12926 [of the FEHA] . . . . [¶] . . . [¶] (d) . . . [I]f the definition of disability used in the federal [ADA] would result in broader protection of the civil rights of individuals with a mental disability or physical disability, as defined in subdivision (b) or (c), then that broader protection shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in subdivisions (b) and (c). The definitions of subdivisions (b) and (c) shall not be deemed to refer to or include conditions excluded from the federal definition of 'disability' pursuant to Section 511 of the federal [ADA] (42 U.S.C. Sec. 12211 [e.g., homosexuality, sexual behavior disorders, gambling, kleptomania, pyromania, or substance use disorders from current illegal drug use]).)"

issue in this appeal, because it defines disability as "substantially" limiting a major life activity. (42 U.S.C. § 12102.)

SPB also cites section 18675, subdivision (b), which provides: "During the investigation or hearing of a complaint of discrimination, harassment, or retaliation of a state employee, the board hearing officer, the departmental hearing officer, the board investigator, or the departmental investigator *shall give due consideration to current laws* and decisions applicable to the state civil service in arriving at a recommended decision. The recommended decisions of the hearing officer and the board shall include references to those laws and decisions applied." (Italics added.)

 Nothing on the face of section 18675 authorizes SPB to apply a current statute that directly conflicts with the version of the statute in effect at the time of the employer's actions.

We conclude the trial court correctly held SPB erred in applying the current statute.

Henning alternatively argues that, even if the proper test is "substantial limitation" on a major life activity, her condition met that test. However, we will not address this argument, because the answer will depend upon the impact of mitigation measures, which the trial court ordered SPB to consider, in a court ruling unchallenged by Henning.

Thus, the trial court ruled an additional ground for remand was that "the law, as it existed prior to 2001, required [SPB] to consider appropriate mitigation factors (e.g., medication devices) in determining whether Ms. Henning qualified as disabled. [SPB] failed to consider mitigating measures."

Henning's brief on appeal says nothing about mitigation factors. SPB's brief says in a footnote, with no citation to authority, that when Henning filed her appeal in 1998 there was no requirement in section 19231 for the employer to consider mitigating measures or apply the federal court interpretations of the ADA with respect to mitigating measures.

 CDC, as respondent on the cross-appeal, argues Henning and SPB, by failing adequately to address the matter, have waived any challenge to the trial court's ruling regarding mitigation measures. We agree. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834] [reviewing court need not consider points not argued or not adequately argued with citation to authority].)

We conclude Henning has forfeited any challenge to the trial court's ruling requiring SPB to consider the effect of mitigation measures.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 27(a)(4).)

Scotland, P. J., and Blease, J., concurred.