Filed 8/27/15  Johnston v. State Personnel Board CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GLENN JOHNSTON,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>STATE PERSONNEL BOARD,<br><br>    Defendant;<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>    Real Party in Interest and Respondent. | C075357<br><br>(Super. Ct. No. 34201180000792CUWMGDS) |

Plaintiff Glenn Johnston retired from his position as chief dentist at a correctional facility in 2005.  In 2007 and 2008 Johnston applied for eight chief dentist positions at other correctional facilities.  After he was not selected for any of those positions, Johnston filed a discrimination complaint with defendant State Personnel Board (Board) under Government Code section 19702.[1]  The Board dismissed the complaint and Johnston filed a petition for a writ of mandate and a supplemental petition for a writ of

_____

[1]  All further references are to the Government Code.

1

mandate in the trial court. The trial court ultimately denied both petitions. Johnston appeals, challenging the evidence in support of the trial court's decision. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

From 1996 until his retirement in December 2005, Johnston had served as chief dentist at the Herman G. Stark Youth Correctional Facility. Prior to that, Johnston was chief dentist at Camarillo State Hospital from 1988 through 1996. His annual salary was $123,000, and he had served as chief dentist for 18 years.

In approximately 2005 a class action lawsuit against the Department of Corrections and Rehabilitation (Corrections) challenged the adequacy of inmate dental care. Corrections entered into a stipulation to settle the case in 2005 that required training of dental staff on progressive discipline, appeals, and access to care (the *Perez* stipulation). As part of the *Perez* stipulation, Corrections was required to decrease the ratio of inmates to dentists, resulting in the need for more dentists. In order to attract candidates, Corrections obtained approval from the Governor's office to increase dentists' salaries. Chief dentists' salaries increased from about $123,000 to about $300,000.

Beginning in 2007 Johnston began applying for chief dentist positions. We summarize each application and result.

**Valley State Prison for Women**

In May 2007 Johnston submitted an application for the chief dentist position at Valley State Prison for Women. As part of the process, Johnston was interviewed by dentists Jean Chang and Linda Martinez. The interview panel selected Lisa Snauffer, who had been in an acting capacity for that position for a time.

**California Men's Colony**

Johnston applied for the chief dentist position at California Men's Colony in San Luis Obispo in July 2007. The interview panel consisted of dentist Linda Martinez and

2

medical doctor Robert Myers.  The panel selected the acting chief dentist, Julie Shepard, for the position.

**California Institution for Men**

The following month, Johnston submitted an application with the California Institution for Men in Chino.  Dentist Lynda Mixon and Richard Robinson, a dental program director, interviewed candidates.  The panel selected Lawrence Yee to fill the position.  Dr. Yee was interim chief dentist at San Quentin State Prison and had 10 years' experience as a chief dentist.

**Headquarters Policy and Risk Management; Training**

In November 2007 Johnston applied for two open positions for chief dentists at Corrections headquarters, one in policy and risk management, and the other in training.  The interview panel consisted of deputy statewide dental director Changsu Park, D.D.S., Linda Martinez, and Richard Robinson.

The panel selected Arthur N. Garbutt for the policy and risk management position.  Dr. Garbutt had been chief dentist at Deuel Vocational Institution (Deuel) and had been deeply involved in implementing policy pursuant to the *Perez* stipulation.  Dr. Garbutt was on special assignment and had already been performing the duties of the risk management position.  No candidate was selected for the training position.  Instead, an individual whose career executive assignment had been terminated, William Kuykendall, had mandatory reinstatement rights to the training position.

**California Substance Abuse Treatment Facility and State Prison**

Johnston also applied for a chief dentist position at the California Substance Abuse Treatment Facility and State Prison in Corcoran in February 2008.  Health care manager Linda Martinez and Gail Martinez interviewed potential candidates.  Venus Fanous was recommended for the position based on her experience supervising large staffs.

**Deuel Vocational Institution**

In August 2008 Johnston applied for the chief dentist position at Deuel in Tracy. Jean Chang and regional administrator Denny Sallade interviewed candidates, but Johnston was not granted an interview as only current Corrections employees were supposed to be interviewed under the screening criteria. However, Ralph Beutler, who was not a current employee, was interviewed.

The panel selected Rosellen Diehl-Hong for the position. Dr. Diehl-Hong was the acting chief dentist at Deuel at the time and was considered successful in the position.

**Ironwood State Prison**

Johnston applied for the chief dentist position at Ironwood State Prison in Blythe in October 2008. The interview panel consisted of regional dental director Lawrence Hansen, Linda Martinez, and William Kuykendall. They selected James Ward, a Caucasian male, who had been acting chief dentist at the prison for the previous 17 months. However, the job was reposted a few months later while Dr. Ward was being investigated. The position was eventually filled in June 2009 by Linda Martinez, who was reinstated to the chief dentist position after her career executive assignment was terminated.

**Subsequent Litigation**

In August 2009 Johnston filed a discrimination complaint with the Board. Johnston alleged he was subjected to discrimination on the basis of race, Caucasian, and sex, male, by Corrections because he was not selected for any of the chief dentist positions he applied for. The Board dismissed the complaint.

Johnston subsequently filed a petition for a writ of mandate in the trial court, challenging the Board's decision. The trial court issued a decision denying the petition in part and granting the petition in part. The court found no evidence of discrimination with respect to seven of the eight positions. The court found the findings regarding the position at Deuel were not supported by the evidence. While the Board found Johnston

4

was not selected for the position because another candidate performed better during interviews, the evidence in the record showed that Johnston did not receive an interview. The matter was remanded back to the Board to "reconsider the evidence in the record and make new findings on the issue whether Johnston proved race or sex was a motivating factor in the decision not to select him for the Chief Dentist position" at the institution.

The Board issued new findings, concluding Corrections did not discriminate against Johnston when it failed to select him for the chief dentist position at Deuel. It also found Corrections selected two white males for chief dentist positions for which Johnston applied.

Johnston filed a supplemental petition for a writ of mandate, appealing the Board's decision. The court denied the supplemental petition, finding Johnston failed to come forward with evidence demonstrating discrimination played a role in the failure to hire him for the Deuel position. Johnston filed a timely notice of appeal.

## DISCUSSION

## STANDARD OF REVIEW

We review the Board's decision under the substantial evidence standard of review. (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1611.) We examine the evidence in the administrative record in the light most favorable to the judgment. We resolve all conflicts in the evidence and draw all inferences in support of the judgment. Substantial evidence consists of evidence of ponderable legal significance, reasonable in nature, credible, and of solid value such that a reasonable person might accept as adequate to support a conclusion. (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 224-225 (*Young*).)

We presume that the Board performed its duty. The burden is on the plaintiff to prove an abuse of discretion by the Board in failing to proceed in the manner required by law or in making a decision unsupported by substantial evidence. (*Young*, *supra*, 97 Cal.App.4th at p. 225.)

5

**Discrimination Claims**

The Board has jurisdiction to hear disability discrimination complaints filed by applicants for state employment. (§ 19702.) Grounds for disability discrimination are the same as those set forth in section 19240, subdivision (a). A Caucasian male may pursue an employment discrimination case based on race and gender discrimination. (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1002.)

Johnston argues Corrections treated him less favorably than other candidates for the chief dentist positions because of his race and gender. In the absence of direct proof of discriminatory intent, the Board applies the analytical framework for discrimination cases developed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668]. Under the *McDonnell Douglas* framework, when an employee alleges discrimination in employment, the employee must first establish a prima facie case of discrimination. The employer can then rebut the employee's claim by offering a legitimate, nondiscriminatory reason for its employment decision. In order to prevail, the employee must show that the employer's proffered reason is pretextual. (*Id.* at pp. 802-805.)

The employee bears the burden of persuading the trier of fact that the employer engaged in intentional discrimination. The ultimate question is whether the employer intentionally discriminated, and evidence that the employer's proffered reason is unpersuasive or contrived does not necessarily establish that the employee's proffered reason for termination is correct. Instead, the trier of fact must believe the employee's explanation of intentional discrimination, not merely doubt the employer's explanation. (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 342-343 (*Arteaga*).)

In other words, the employee will not prevail by simply showing the employer's decision was wrong or mistaken, since the crucial factual issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Instead, the employee must demonstrate such weaknesses, implausibility,

6

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a trier of fact could legitimately find them " ' " 'unworthy of credence' " ' " and infer that the employer did not act for the asserted nondiscriminatory reason. (*Arteaga*, *supra*, 163 Cal.App.4th at pp. 342-343.)

**Trial Court's Decision**

The trial court found Johnston failed to produce sufficient evidence to show he was denied an interview because of his gender. Several of the interviewed candidates were male. Corrections also granted Johnston, a male, interviews for seven other positions. The court concluded: "Thus, it is not reasonable to infer that [Corrections] denied Johnston an interview because of his gender."

In addition, the court found no evidence from which to infer Corrections denied Johnston an interview because of his race. No evidence revealed Corrections refused to interview any white candidates. Corrections interviewed and recommended a white male for one of the chief dentist positions. Nor did Johnston provide any evidence suggesting the interviewers harbored discriminatory animus toward white male candidates. The court noted the interviewers for the position at Ironwood State Prison, who ultimately recommended a white male, rated Johnston "less than competitive" for the position, and in at least three out of the seven positions for which Johnston interviewed, other white male candidates scored higher than Johnston did. Although Corrections did not select a white male candidate for the Deuel position, "Johnston presents nothing but speculation that the decision not to interview him was motivated by his race."

The court stated that even if Johnston had established a prima facie case for discrimination, Corrections presented a legitimate, nondiscriminatory reason for its decision not to interview him: that only current Corrections employees were being interviewed. Johnston challenged this assertion, arguing that Corrections interviewed at least one candidate, Dr. Ralph Beutler, who was not a current employee. The trial court determined: "However, the [Board] found this evidence was not sufficient to show that

[Corrections's] articulated reason was a pretext for discrimination. The [Board's] finding is supported by substantial evidence in the record."

## EVIDENCE SUPPORTING THE HIRING DECISIONS

Johnston faults Corrections for failing to have "any standardized system in place to reliably evaluate the responses of the candidates for the various positions." According to Johnston, "the evidence shows that there were significant weaknesses, inconsistencies and incoherencies in the hiring process that was a pretext for discrimination." We consider the evidence surrounding the selection of candidates for each of the positions for which Johnston applied.

**Valley State Prison for Women**

Linda Martinez and Jean Chang selected Lisa Snauffer for the chief dentist position. Dr. Snauffer had been the acting chief dentist at the facility and had knowledge of the existing policies and procedures. She was familiar with the women's programs at the facility and with the challenge of dealing with pregnant inmates. In addition, Dr. Snauffer had demonstrated an ability to lead that prison group.

Chang expressed disappointment with Johnston's interview. Despite his impressive credentials, Johnston "wasn't able to articulate a lot of that stuff during the interview." Chang described Johnston as "rambling" and "poorly organized." Johnston lacked the background of working with adults and any familiarity with the policies and procedures required by the *Perez* stipulation. Chang's comments and observations provide a nondiscriminatory reason for not selecting Johnston.

**California Men's Colony**

Julie Shepard was selected for the chief dentist position. Linda Martinez testified Dr. Shepard performed better during the interview process than Johnston did, providing very complete and thorough answers. Dr. Shepard exhibited familiarity with the *Perez* stipulation and the requirements of running a large institution of 30-plus staff members.

8

Linda Martinez stated that "Dr. Shepard came over -- came into [California Men's Colony] when the institution was undergoing a great deal of change, and it was into a negative environment. She took a negative environment and transposed that into a very positive environment as an acting Chief. She was able to, as her answers -- my notes states [*sic*], she could get people to work and to be happy."

However, Johnston did not have a strong interview and lacked "the spark, the fire of a leader." Johnston lacked experience running a large staff, and his responses during the interview revealed this deficit. Martinez characterized Johnston's responses as "rote" and "mediocre." Johnston also omitted some important safety aspects of the position and failed to mention documenting infection control. Martinez's comments provide a nondiscriminatory reason for selecting Dr. Shepard over Johnston.

**California Institution for Men**

The interview panel selected Lawrence Yee for the chief dentist position. Dr. Yee had previously served as chief dentist for 10 years at the facility and was currently working as the interim chief dentist at San Quentin State Prison. Interviewer Lynda Mixon testified Dr. Yee answered questions more thoroughly than did Johnston and exhibited much better managerial experience. Dr. Yee managed about 30 people when he was at the institution, while Johnston's previous posting had a much smaller staff.

During the interview, Johnston gave long, rambling answers. In response to a question, Johnston failed to explain how he would prioritize staffing issues. He also could not identify the items in the emergency kit and had difficulty with questions about handling employee complaints. Mixon's comments and observations support a nondiscriminatory reason for hiring Dr. Yee and not Johnston.

**Headquarters: Policy and Risk Management**

Johnston interviewed simultaneously for both the headquarters policy and risk management position and the headquarters training position. Arthur Garbutt was selected for the policy and risk management position. Changsu Park, Linda Martinez, and

9

Richard Robinson interviewed the candidates. Martinez stated Dr. Garbutt had "intimate knowledge" of the *Perez* stipulation procedures, which was important for the position. When Dr. Garbutt was promoted to chief dentist at Deuel, he was instrumental at implementing the policies required by the stipulation.

Robinson stated they were looking for someone familiar with oversight of a policy-making program over a large organization. Johnston did not have the skills they were looking for, since he lacked experience in policy making within a large organization. Martinez and Robinson provide nondiscriminatory reasons for not hiring Johnston.

## Headquarters: Training

None of the candidates interviewed for this position was selected. Instead, William Kuykendall was reinstated to that position after his position in a career executive assignment was terminated. Since it was a mandatory reinstatement, there is no evidence of discrimination.

## California Substance Abuse Treatment Facility and State Prison

Linda Martinez testified that the top two candidates for the position were Venus Fanous, a female, and Richard Davis, a Caucasian male. The panel selected Dr. Fanous based on her experience supervising a large staff. Dr. Fanous had "a proven track record to be able to go in and manage 56 people, who, at times, were having some interpersonal concerns amongst the staff." Previously, Dr. Fanous was employed in a large practice, had been the director of that large clinic, and had worked at two correctional facilities.

Martinez also commented that Johnston's interview answers indicated he did not comprehend the difficulties inherent in managing a large staff. In addition, Johnston's answers to questions about training and locating missing equipment were found lacking. The panel's selection of Dr. Fanous shows no discriminatory bias against Johnston.

**Deuel Vocational Institution**

Johnston was not interviewed for the position at Deuel. He contends Corrections told him only current employees would be interviewed, yet another retiree, Ralph Beutler, was granted an interview. This fact points to a discriminatory motive in failing to interview him.

The Board initially found Johnston was interviewed for the Deuel position but was not selected because another candidate performed better than Johnston performed during the interview process. However, Corrections later acknowledged Johnston was never interviewed for the position. The trial court issued a writ compelling the Board to set aside its findings in regard to the Deuel position and to make new findings based on the evidence in the record as to whether Johnston proved he was subject to race or gender discrimination in regard to that position.

On remand, the Board found Johnston failed to meet his burden of proof: "Although a white male was not selected for the position, that fact, by itself, is not a sufficient circumstance to suggest discriminatory motive. No evidence suggested a direction by [Corrections] management to discriminate against white males, or to select female or non-white candidates. Thus, one must look to the motives of the panel members. [Johnston] did not prove that either Sallade or Dr. Chang [the interviewers] had any discriminatory motive."

The Board also assumed, for the sake of argument, that Johnston had established a prima facie case but found Corrections met its burden of producing evidence of nondiscriminatory reasons for its decision. According to the Board: "[Corrections] selected Dr. Diehl for the [Deuel] position. Dr. Chang based her decision partly on the fact that Dr. Diehl was already familiar with [Deuel] procedures and had served as the Acting Chief Dentist there. Although [Johnston] may disagree with the assessment of his qualifications compared to the successful candidate, [Johnston] did not demonstrate that

11

there are such weaknesses, inconsistencies or incoherencies to show that [Corrections's] reasons were a pretext for discrimination. [Citation.]"

The trial court, in denying Johnston's supplemental petition for a writ of mandate, found that even if he established a prima facie case, Corrections articulated a legitimate, nondiscriminatory reason for its decision not to interview him, namely, "that only current [Corrections] employees were being interviewed." The court acknowledged Johnston attempted to rebut this by showing this explanation was false—that Corrections interviewed at least one individual who was not a current employee. However, the court found "the [Board] found this evidence was not sufficient to show that [Corrections's] articulated reason was a pretext for discrimination. The [Board's] finding is supported by substantial evidence in the record. Accordingly, the petition shall be denied."

Johnston argues that contrary to the trial court's determination, the Board's decision on remand fails to address "the issue raised by the Trial Court's Order remanding the matter to the [Board]—whether he was denied an interview at [Deuel] because of race and/or gender, or because the interviews were limited to only current [Corrections] employees." Therefore, according to Johnston, no evidence supports the Board's finding or the trial court's order that he was not subjected to discrimination at Deuel because of race and/or gender. We disagree.

Johnston asserts that on remand the issue before the Board was whether he was denied an interview because of his race and/or gender or because the interviews were limited to current Corrections employees. However, the trial court's remand order simply requires the Board to correct its mistake in finding Johnston was granted an interview for the Deuel position. The remand order also states the ultimate issue is "whether Johnston proved race or sex was a motivating factor in the decision not to select him for the Chief Dentist position at [Deuel]."

In addition, while the Board did not expressly find Corrections's false explanation regarding the pool of those interviewed was insufficient evidence of pretext, the Board

reviewed the circumstances surrounding the hiring for the Deuel position and found Johnston failed to show pretext. The fact that Corrections originally provided incorrect information regarding those interviewed does not rebut or undermine the Board's finding, based on all the evidence before it, that Johnston failed to show Corrections's proffered explanation amounted to pretext.

**Ironwood State Prison**

In alleging discrimination on the part of Corrections, Johnston states no Caucasian males were hired for any of the positions he applied for. However, James Ward, a Caucasian male, was selected as chief dentist for Ironwood State Prison. He had served as acting chief dentist for the prior 17 months, supervising 30 to 40 staff members. Dr. Ward did not ultimately serve as chief dentist due to an ongoing investigation. Linda Martinez eventually filled the position after she was reinstated when her career executive assignment was terminated. Again, we find no evidence of the discrimination Johnston alleges in the filling of the position. Standing alone, the absence of male Caucasian hires does not compel an inference of discrimination.

Our review of the filling of each of the positions Johnston applied for reveals no evidence of a discriminatory motive on the part of Corrections. Nor do we find any evidence of pretext. As the trial court correctly found, the Board's findings are supported by substantial evidence.

## DISPOSITION

The judgment is affirmed. Corrections shall recover costs on appeal.

                     RAYE          , P. J.

We concur:


          HULL          , J.


          MURRAY        , J.

13