Filed 9/23/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JUSTIN CHAPLIN et al.,<br><br>     Plaintiffs and<br>     Appellants,<br><br>v.<br><br>STATE PERSONNEL<br>BOARD,<br><br>     Defendant and<br>Respondent;<br><br>DEPARTMENT OF<br>FORESTRY AND FIRE<br>PROTECTION,<br><br>     Real Party in Interest<br>and Respondent. | A155107<br><br>(San Francisco County<br>Super. Ct. No.<br> CPF16515145) |

     Real party in interest California Department of Forestry and Fire Protection (CAL FIRE) disciplined three of its firefighters (appellants Justin Chaplin, James Michels, and Frank Schonig) for cheating on a promotional exam.  One of the men appealed his discipline to respondent California State Personnel Board (Board), but the other two did not.  While the one appeal was pending, CAL FIRE substituted new disciplinary notices against all three men, seeking to impose harsher penalties.  Over the men's objections, the Board allowed CAL

1

FIRE to proceed. The firefighters filed a petition for a writ of mandate in the trial court, which the court denied.

We hold that CAL FIRE permissibly substituted its disciplinary notice against the firefighter whose appeal was pending before the Board, but not against the other two, because by statute their discipline became final 30 days after they did not appeal. (Gov. Code, § 19575.)[1] We therefore affirm the trial court's ruling as to the one firefighter and reverse it as to the other two.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Appellants started with the Department in the 2000's: Chaplin in 2002, Michels in 2004, and Schonig in 2006. In April 2014, they and four other candidates applied to be interviewed for three fire captain positions that had become available. Before the interviews, a battalion chief surreptitiously texted information to appellants about the interview, including interview questions and desired responses. Without reporting that they had received this information, appellants proceeded with the interview and performed well. Chapin and Schonig were appointed to be limited-term fire captains, and Michels was appointed to be a permanent fire captain.

An investigation was launched against the battalion chief after he was accused of murdering his girlfriend and engaging in wrongdoing at CAL FIRE's Academy. In the course of this

_____

[1] All statutory references are to the Government Code unless otherwise specified.

2

investigation, appellants admitted that they had received the text messages about the interviews.

In January 2015, CAL FIRE served disciplinary notices, known as notices of adverse action, on appellants. Chaplin and Schonig were notified that their appointments as limited-term fire captains would end, and Michels was notified that he failed his probationary period. They were also all notified that their pay would be reduced by five percent for 12 months. This discipline was upheld in February, after each of the men was given a hearing conducted in compliance with *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*).[2] The three firefighters did not appeal their discipline to the Board before the deadline to do so, but Schonig later sought and received a good-cause exception to the deadline. His appeal was therefore allowed to proceed.

Within weeks of their discipline being upheld, two of the three firefighters were given new interviews and were again promoted: Schonig to be a permanent fire captain, and Chaplin to be limited-term fire captain at a different unit from his previous appointment

---

[2] *Skelly* requires that civil-service employees be given notice of proposed disciplinary action, the reasons for the action, a copy of the charges and the written materials upon which they are based, and an opportunity to respond either orally or in writing. (*Skelly*, *supra*, 15 Cal.3d at p. 215.) A "*Skelly* hearing" refers to the employee's opportunity to respond, and it has been described as an "informal probable-cause-type proceeding." (Asimow et al., Cal Practice Guide: Administrative Law (The Rutter Group 2019) ¶ 3:196, p. 3-33 (Asimow).)

3

In early May, the Sacramento Bee published an article with comments by the director of CAL FIRE about Schonig and Chaplin's "boomerang promotions." The article reported that the firefighters' "re-promotions caught [the director] off-guard," and he was "unhappy that both men so quickly regained the rank he stripped from them." According to the article, the director would "like to bust them down again."

Shortly after the article was published, CAL FIRE notified Chaplin and Michels that the disciplinary action taken against them was "withdrawn," and they were placed on administrative leave. It also notified Schonig, who was still in the process of appealing his original discipline, that his discipline was being rescinded and he would also be placed on administrative leave. CAL FIRE then notified the three that they would be sanctioned more severely by being demoted from their then-current positions to the position of Fire Fighter II, effective June 1. They appealed the new discipline to the Board.

In proceedings before the Board, the three men separately moved to dismiss the imposition of the new discipline. They all argued that they could not be disciplined again for the same conduct for which they had already been disciplined. They relied on precedential Board decisions holding that a state employer cannot take adverse action against an employee if the employee

4

has already been disciplined for the same conduct.[3]  They also cited Board rules contained in the California Code of Regulations regarding the finality of disciplinary proceedings.  (Cal. Code Regs., tit. 2, § 52.4, subd. (e)(1)(A) & (e)(3) (Board rule 52.4).)[4]  A Board administrative law judge (ALJ) denied the firefighters' motions to dismiss.

A consolidated evidentiary hearing on the new disciplinary actions was held in January 2016.  In a proposed decision, the ALJ concluded that CAL FIRE had proven the charges against the firefighters by a preponderance of the evidence, that their conduct constituted legal cause for discipline, and that their demotions were warranted.  The Board adopted the decision at a meeting in April 2016.

The firefighters filed a petition for rehearing.  In it, they again relied on Board rule 52.4 and renewed their argument that the second notices of adverse action against them were improper because they previously had been disciplined for the same conduct.  The Board denied the petition without comment.

---

[3] Under section 11425.60, subdivision (b), an agency "may designate as a precedent decision a decision or part of a decision that contains a significant legal or policy determination of general application that is likely to recur."  (See also § 19582.5 [applicability to Board proceedings].)  On March 13, 2020, this court granted appellants' unopposed request for judicial notice of the Board decisions that were cited below and relied on by all parties in this appeal, as well as an additional precedential decision that was not presented to the Board.

[4] All references to Board rules are to the California Code of Regulations, title 2, section 51.1 et sequitur.

5

In June 2016, the three firefighters filed a petition for a writ of administrative mandamus in the trial court under Code of Civil Procedure section 1094.5. In their petition, while not challenging any of the Board's factual findings, they reiterated their claim that the Board was prohibited from disciplining them twice for the same misconduct. In their memorandum of points and authorities supporting the petition, they relied on statutes and Board rules that they maintained restricted a state employer's ability to amend an adverse action. (§ 19575.5 [amended notices]; Board rule 52.8, subd. (b) [good cause required to amend pleading].) Both CAL FIRE and the Board filed oppositions. In their reply brief, the firefighters specifically cited section 19575 for the first time and argued that it precludes employers from withdrawing final disciplinary actions regardless of any Board decisions that might suggest otherwise.

The trial court denied the petition following a hearing. The court's order acknowledged that the firefighters' position was "not unreasonable" and was "supported by considerations of fairness and public policy." But it nonetheless considered itself constrained because "the Board's position [wa]s neither a clearly erroneous nor arbitrary application of its precedents." The court further concluded that "[t]he Board's double jeopardy precedents are not based on Government Code [section] 19575" and that the Board's determination did not violate the statute in any event. This appeal followed.

## II.   DISCUSSION

*A. The Board's Reliance on Its Precedential Decisions.*

The parties dispute both the deference to which we should afford the Board's prior precedential decisions and the way in which they were applied in this case. Although none of the decisions address the precise issue presented here, the parties rely on them extensively. We thus begin by summarizing the most relevant of these cases.

In *In the Matter of the Appeal by Gary Blakeley* (1993) SPB Dec. No. 93-20 (*Blakely*), a Department of Transportation employee was informally disciplined with multiple letters of warning about his conduct, and was later served with a notice of adverse action of dismissal based on that same conduct. The Board concluded that incidents used for the basis of informal discipline cannot later be used for the basis of formal discipline, except to show the employee had been warned or progressively disciplined for prior misconduct. The Board's analysis of the issue spanned only two paragraphs and did not cite to any legal authority.

The following year, in *In the Matter of the Appeal by Steven Richins* (1994) SPB Dec. No. 94-09 (*Richins*), the Board considered a data-center employee who had been issued letters of warning about his negative performance. The employee later received a notice of adverse action that listed only one new incident not covered in the letters of warning. The Board reaffirmed that under *Blakeley*, "an employee who has already been subject to discipline c[annot] again be disciplined for charges arising out of the same facts." The Board stated that it

7

stood by its "policy that a department should not discipline employees twice for the same incidents of poor performance or misconduct," even though it acknowledged that ALJs had inconsistently applied this policy. The Board remarked, "[T]he question of whether an employee is being disciplined twice for the same misconduct will be decided on a case-by-case basis," and it continued by explaining that *Blakeley* "was never intended to preclude an employer from taking formal adverse action after merely documenting employee misconduct or from counselling or instructing employees as to the need for improvement." As in *Blakeley*, the Board did not cite any legal authority for its position.

While the Board has prohibited punishing the same wrongdoing twice, it has allowed employers to amend notices of adverse action in pending cases. In *In the Matter of the Appeal by E.W.* (1999) SPB Dec. No. 98-1230 (*E.W.*), the Board considered an employer that amended a notice of adverse action against a correctional officer on the first day of a hearing before an ALJ. After noting the general procedural requirements of *Skelly*, *supra*, 15 Cal.3d at page 215, the Board explained that under section 19575.5, an employer may, with the consent of the Board, amend a notice of adverse action at any time before an employee's appeal is submitted to the Board or its authorized representative for decision. The Board concluded that when an employer requests permission from an ALJ to amend a notice of adverse action (§ 19575.5), and the employee objects, the ALJ may allow the amendment but shall order that the effective date of adverse

8

action be modified and order that the employee be given an opportunity to respond to the new charges at a new *Skelly* hearing.  In a footnote, the Board stated without citing authority, "An employer may withdraw a notice of adverse action and serve a new notice without obtaining prior Board approval.  If an employer takes such unilateral action, it must reimburse the disciplined employees for any backpay and benefits lost between the original effective date of the withdrawn adverse action and the new effective date of the new adverse action."  *E.W.* concluded that because the amended notice of adverse action at issue merely added additional factual details without any new charges or legal causes for discipline, no new *Skelly* hearing was required, and the employee was not entitled to a new effective date or an award of backpay.

The firefighters here argued that the ALJ was required to dismiss the new disciplinary actions because they could not be disciplined twice for the same conduct under *Blakeley*, *Richins*, and other precedential Board decisions.  CAL FIRE argued that *Blakeley* and *Richins* were distinguishable because in those cases, the employers had not withdrawn the first discipline imposed, whereas here CAL FIRE withdrew the first discipline, made the firefighters whole, and served revised notices of adverse action.

In denying the firefighters' motions to dismiss, the ALJ noted that neither the State Civil Service Act (§ 18500 et seq.) nor the Board's regulations (Cal. Code Regs., tit. 2, § 1 et seq.) address an employer's authority to withdraw a notice of adverse action and issue a new one.  The ALJ acknowledged the

9

precedential Board decisions cited by the firefighters, but observed that "the Board has repeatedly recognized an appointing power's ability to withdraw a [notice of adverse action], and serve the employee a new [notice of adverse action], without violating the 'double jeopardy' prohibition." After analyzing additional precedential authority, including *E.W.*, the ALJ remarked that "the Board has consistently acknowledged than an appointing power does not punish an employee twice for the same conduct where it voids the first punishment and makes the employee whole for the voided punishment." The ALJ concluded that CAL FIRE had not violated the prohibition against disciplining employees twice for the same misconduct because it had followed Board guidance and had made the firefighters whole before imposing the new discipline on them.

The trial court gave "considerable deference" to the Board's precedential decisions and concluded that the Board's position was "neither a clearly erroneous nor arbitrary application of its precedents."

B. *The Standard of Review.*

As we have mentioned, the firefighters' petition for a writ of administrative mandate was brought under Code of Civil Procedure section 1094.5. In such a case, the trial court looks at whether the administrative agency "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by

10

the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) "The scope of our review from a judgment on a petition for writ of mandate is the same as that of the trial court." (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2015) 238 Cal.App.4th 710, 716.)

The firefighters contend that the issue to be decided is a question of law to be reviewed de novo because they do not challenge any of the Board's factual findings and only contend that the ALJ's decision to allow the second notices of action to proceed was contrary to statute. By contrast, the Board and CAL FIRE contend that the application of the Board's precedential decisions in this case is reviewed under the "arbitrary and capricious" standard. The firefighters have the better argument because the resolution of this appeal turns on the legal effect of section 19575.

When an "appeal from the administrative mandamus proceeding presents questions of law, our review is de novo." (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1611 (*Henning*).) "We respect but do not necessarily defer to [the Board's] interpretations of the governing statutes," and we apply a " ' "respectful but nondeferential standard of review" ' " to Board interpretations of governing statutes. (*Ibid.*) "The judiciary takes ultimate responsibility for the construction of statutes, although according great weight and respect to the administrative construction such as is appropriate under the circumstances." (*Ibid.*; see also *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13

11

(*Yamaha*) [weight to be given to an agency's legal conclusion is situational and involves complex factors such as the particular agency offering the interpretation, whether the agency has expertise in the issue to be decided, and whether agency interpreted its own regulation or a statute].)

The Board contends that it was interpreting "its own policy" as set forth in "its own precedential decisions." CAL FIRE similarly claims that the Board's "administrative rules regarding double jeopardy and the withdrawal of adverse actions" are not based on statute and instead "are entirely the creation of [the Board's] administrative rulings." We agree that "agencies often make policy through adjudicatory decisions that are treated as precedent by later agency decisions," and agency reliance on these decisions "should be encouraged because it contributes to principled decisionmaking and to consistency and predictability of results." (Asimow, *supra*, at ¶ 6:442, p. 6-52.) Nevertheless, "[Board] precedents are not binding on this court." (*Henning, supra,* 121 Cal.App.4th at p. 1618.) "Because an interpretation is an agency's *legal opinion*, however 'expert,' rather than the exercise of a delegated legislative power to make law, it commands a commensurably lesser degree of judicial deference." (*Yamaha, supra,* 19 Cal.4th at p. 11.)

True enough, the state constitution empowers the Board to enforce civil service statutes (Cal. Const., art. VII, § 3, subd. (a)), and the Board "must necessarily interpret, enforce, and administer" the State Civil Service Act. (*Henning, supra,* 121 Cal.App.4th at p. 1612.) "Nevertheless, the proper

12

interpretation of a statute is ultimately the court's responsibility." (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 462.) " 'The Board has no greater power than we do to graft a nonexistent requirement into a statute.' " (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2016) 247 Cal.App.4th 700, 708 (*Iqbal*).) That the Board has not yet addressed the exact question presented here in a precedential decision, as all the parties seem to recognize, provides an additional reason for us to review the issue de novo.

The Board argues that we should afford a "high degree of deference" to the Board's "specialized administrative expertise" in "adjudicating matters within the scope of [its] jurisdiction." It relies on *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912, in which the Supreme Court affirmed a "hybrid approach" to reviewing the Public Employment Relations Board's (PERB) interpretation of public employee labor relations statutes. " ' "PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' [Citation.]" [Citation.] We follow PERB's interpretation unless it is clearly erroneous. [Citation.]' [Citation.] . . . . Even so, courts retain final authority to ' "state the true meaning of the statute." ' [Citation.] A hybrid approach to review in this *narrow area* maintains the court's ultimate interpretative authority

13

while acknowledging the agency's administrative expertise." (*Id.* at pp. 911–912, italics added.)

We are not persuaded the circumstances here warrant a similar high degree of deference. First, although the Board is constitutionally vested with the authority to review civil service statutes (Cal. Const., art. VII, § 3, subd. (a)), it is unclear that the Supreme Court would apply this "hybrid approach" to the Board. (See Asimow, *supra*, at ¶ 17:124, p. 17-27 ["It is unclear why the Supreme Court adopted this 'hybrid approach' by treating labor law agencies differently from many other state administrative agencies, all of which enjoy delegated adjudicatory power and have developed expertise in applying broadly phrased statutory language to complex practical situations."].) Second, and more importantly, we are skeptical that the Board relied on any "specialized administrative expertise" in resolving the issue here of whether to allow new discipline for misconduct that was previously disciplined in a statutorily final prior action. Whatever merit there may be to having a uniform discipline policy as expressed in precedential decisions, the Board was in no better position than the courts to determine in the first instance whether revoking a prior final discipline was barred by statute.

CAL FIRE and the Board both take the position that the Board was not interpreting a statute but was instead interpreting the Board's "own administratively-created rule" (according to CAL FIRE) or "the rules established and explained in [the Board's] precedential decisions" (according to the Board). Based on this premise, CAL FIRE argues all the reasons why this

14

court should defer to the Board's "administrative rules" and suggests we should apply "the most deferential standard of review" to the Board's "quasi-legislative rule."  Again, though, this court retains the ultimate authority to decline to defer to any such rule interpretations to the extent they conflict with a statute.

In short, we agree with the firefighters that the question whether the Board's decision was contrary to statute is a legal question we review de novo.

### C. The Notices of Adverse Action That Became Final Were Not Subject to Withdrawal.

#### 1. The Statutory Disciplinary Procedure.

To resolve the question before us, we begin with an overview of the State Civil Service Act's disciplinary procedure. "Generally speaking, the Board's authority in disciplinary matters is limited to that of reviewing disciplinary action taken by appointing authorities.  (*Skelly*[, *supra*, 15 Cal.3d at pp. 201–202].)  An 'appointing power' is a person or group having authority to make appointments to positions in the state civil service.  (Gov. Code, § 18524; Cal. Code Regs., tit. 2, § [3.5].)  Under our statutory scheme for employee discipline, the appointment power is vested with the initial authority to determine and impose appropriate discipline.  The Board, in turn, is vested with the authority to review the appointing power's action.  While the Board's authority is broad, it is not plenary.  The Board may modify or revoke the appointing power's imposition of discipline for one of three reasons:  (1) the evidence

15

does not establish the fact of the alleged cause for discipline; (2) the employee was justified; or (3) the cause for discipline is proven but is insufficient to support the level of punitive action taken.  Unless one of these factors is present, the appointing power's action must stand.  [Citation.]

"The appointing power or its authorized representative may take adverse action against an employee for one or more of the causes for discipline specified by [section 19572] . . . .  'Adverse action' means dismissal, demotion, suspension, or other disciplinary action.  (Gov. Code, § 19570.)  No later than 20 calendar days after service of the notice of adverse action, the employee may file a written answer to the notice with the Board.  Whenever an answer is filed to an adverse action, the Board or its authorized representative shall hold a hearing within a reasonable time.  (Gov. Code, § 19578.)  Failure of either party (the employee, the employer, or their representatives) to proceed at the hearing shall be a withdrawal of the cause of action or appeal, unless the hearing is continued by mutual agreement of the parties, or upon a showing of good cause.  (Gov. Code, § 19579.)"  (*Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 274 (*Larson*).)

Under this disciplinary scheme, "the appointing power has the authority to take disciplinary action subject to appeal to the Board.  (Gov. Code, § 19574.)  If the employee fails to request or to prosecute an appeal to the Board, *then the appointing power's action is final*.  (Gov. Code, § 19575; [citation].)"  (*Larson, supra,* 28 Cal.App.4th at p. 278, italics added.)  Section 19575 provides

16

the conditions for finality: "The employee has 30 calendar days after the effective date of the adverse action to file with the board a written answer to the notice of adverse action.  The answer shall be deemed to be a denial of all the allegations of the notice of adverse action not expressly admitted and a request for hearing or investigation as provided in this article.  With the consent of the board or its authorized representative an amended answer may subsequently be filed.  If the employee *fails to answer within the time specified* or after answer withdraws his or her appeal the adverse action taken by the appointing power *shall be final.*  A copy of the employee's answer and of any amended answer shall promptly be given by the board to the appointing power."  (Italics added.)

The firefighters contend that because the previous adverse actions had become final under section 19575, CAL FIRE was prohibited from withdrawing the previous notices and initiating new ones.

### 2. The Firefighters Did Not Forfeit Their Statutory Argument.

We first reject respondents' argument that the firefighters forfeited their argument based on section 19575 by not raising it below.  Respondents accurately point out that the firefighters did not specifically cite the statute before the Board, and only cited it in the trial court when they filed their reply brief in support of the writ petition.  But their argument throughout these proceedings, up through this appeal, has been consistent:  further disciplinary action against them was barred because the original

17

discipline had become final. Furthermore, in their original motion to dismiss before the Board, the firefighters relied on Board rules that mirror and refer to the finality precept of section 19575. They noted that an appeal from a disciplinary action must be filed within 30 days under Board rule 52.4(e)(1)(A), and they argued that after that deadline passes the "finality" of the discipline should be binding on both the employee and the employer. Board rule 52.4(e)(1)(A), in turn, explicitly provides that "[a]ppeals from disciplinary action filed *pursuant to the provisions of Government Code section[] 19575*, shall be filed within 30 days after the effective date of the notice of adverse action." (Italics added.) Under these circumstances, we cannot say that the firefighters forfeited their argument based on section 19575.

Respondents' reliance on *Bohn v. Watson* (1954) 130 Cal.App.2d 24 is misplaced. There, a licensed real estate broker defended herself before the Real Estate Commissioner against accusations of fraud, misrepresentation, and deceit. (*Id.* at p. 26.) The agent maintained—both in administrative proceedings and in a petition for a writ of mandate in the trial court—that the evidence did not support the accusations, but she did not claim that the charges were time-barred. (*Id.* at pp. 26–28.) For the first time in her opening brief in the trial court, the agent argued that one of the charges against her was barred by the statute of limitations. (*Id.* at p. 28.) The trial court rejected the defense, and the appellate court concluded that the issue was forfeited because it had not been raised in the administrative

18

proceedings.  (*Id.* at p. 36.)  According to the court of appeal, it did not matter that the trial court had made findings on the defense, because "as [the findings] were not part of the issues raised or adjudicated in the administrative hearing, the findings thereon were immaterial and wholly surplusage." (*Id.* at pp. 36–37.)  Here, by contrast, the issue of whether the Board was barred from disciplining the firefighters after a previous discipline had become final was squarely before the Board during administrative hearings.

Moreover, we disagree with CAL FIRE's assertion that the firefighters "are essentially making a statute of limitations argument."  "[T]he statute of limitations is a personal privilege which is waived unless asserted at the proper time and in the proper manner, whether it be a general statute of limitations or one relating to a special proceeding." (*Bohn v. Watson*, *supra*, 130 Cal.App.2d at p. 36.)  Here, the firefighters have consistently claimed that the Board lacked the legal authority to proceed against them twice for the same behavior.  Their specific argument that a substitution of disciplinary charges must occur before an action is concluded is based on principles related to statutory finality, not on those related to limitation periods.

> 3.  CAL FIRE Was Not Permitted to Withdraw the Notices of Adverse Action That Were Not Appealed and Were Final.

On the merits, we agree with the firefighters that once a disciplinary action becomes final, the employer is prohibited from withdrawing it and initiating a new adverse action.  The plain language of section 19575 could not be clearer:  an appointing

19

power's discipline is final where no appeal is taken within 30 calendar days.  It may be true, as the Board notes, that the statute does not specifically "limit[] the employer's right to withdraw the action, reimburse the employee for any lost backpay and benefits, and impose a new action within the applicable statute of limitations."  But nothing can be read into the absence of such a limitation.  We reject respondents' suggestion that the Legislature was required essentially to say it really meant it after it established the finality of adverse actions in section 19575.

Respondents' other arguments are also not persuasive. CAL FIRE relies on inapposite dicta in the Board's precedential decision *In the Matter of the Appeal by Ralph Rey* (1999) SPB Dec. No. 99-10 (*Rey*).  In *Rey*, an employer failed to file a notice of adverse action with the Board within 15 days after the effective date of the adverse action as required under section 19574.  The employee argued that the employer's failure to comply with the time requirement "invalidate[d]" the notice of adverse action, but the Board disagreed.  It concluded that the deadline was directory as opposed to mandatory, meaning that the Board retained jurisdiction even though the employer did not meet the filing deadline.  The Board observed that its "jurisdiction over an adverse action is triggered when a disciplined employee[] files an appeal from an adverse action with the Board, not when the employer files the notice of adverse action.  If a disciplined employee does not file an appeal with the Board in accordance with Government Code § 19575, the Board will not review the

20

adverse action, and the adverse action will stand, *unless the employer withdraws the action* or the parties otherwise settle the matter.  If the Board were to interpret the [15-day] filing requirements of Government Code § 19574 to be mandatory, it would have the effect of invalidating all adverse actions not filed with the Board within the 15-day period, even those that are not appealed by disciplined employees.  Clearly, the Legislature would not have intended such a consequence when it enacted the statute." (Italics added.)  This discussion has little application to the circumstances here because it was made in the context of an employer withdrawing an action before—not after—the adverse action was final.

The same is true of *Gatti v. California Department of Parks and Recreation* (2012) (Case No. 10-4368A) (*Gatti*), a nonprecedential decision upon which the ALJ relied in denying the firefighters' motions to dismiss.  There, an employee was served with a notice of adverse action for inappropriate conduct while driving a department truck, but about a year later was served with a second notice regarding separate conduct.  After a series of motions before the Board, the employer sought permission to withdraw both notices without prejudice, and the ALJ accepted the withdrawal.  The employer then served a new notice of adverse action that alleged the same facts as the previous two notices.  The new notice increased the penalty sought from a five-percent pay reduction for eight months to a five-percent reduction for 12 months.  Following a hearing, the ALJ concluded that the penalty for the new notice of adverse

21

action was excessive and reduced it to a five-percent pay reduction for three months. The ALJ noted among other things that the employer had not provided a rationale for the increased penalty.

The Board rejected the ALJ's proposed decision. In its nonprecedential decision, the Board adopted the ALJ's findings of fact and conclusions of law, except as to the modified penalty. The Board disagreed with a number of alleged mitigating circumstances. As for the idea that the employer had failed to provide a rationale for increasing the penalty, the Board concluded that "[t]here was no showing that [the employer] was restricted from re-evaluating the factual and legal grounds for discipline and re-serving [the employee] with a single [notice of adverse action] that assessed a different penalty."

Here, the ALJ remarked that "[c]learly, the original [notices of adverse action] in [*Gatti*] had taken effect when the appointing power withdrew them and issued the new, harsher [notice]. . . . If the Board found such conduct amounted to improperly disciplining an employee twice for the same conduct, the Board would have stated so. Instead, the Board not only rejected the ALJ's consideration of the original [notices], but affirmed the appointing power's right to withdraw the original [notices] and serve the [employee] with a new [notice]." But these remarks miss the point that *Gatti* simply did not address whether an employer could withdraw a notice of adverse action that *already had become final*. Instead, *Gatti* was considering

the appropriate factors for evaluating the severity of discipline, something that is not at issue in this appeal.

Our conclusion that an employer cannot withdraw a final disciplinary action is consistent with *Gonzales v. State Personnel Bd.* (1977) 76 Cal.App.3d 364 (*Gonzales*). In *Gonzales*, the court directed the Board to consider an employee's appeal, even though he had missed the deadline under section 19575, because the employee had established good cause to be excused from a six-day filing delay. (*Gonzales* at pp. 365–366.) The court concluded that because the case involved a fundamental and vested right (a job covered by the State Civil Service Act), the statutory scheme should be liberally construed in favor of the employee. (*Gonzales* at p. 367.) Such a liberal construction meant that even though no regulation or statute permitted a late appeal of an administrative decision, "discretionary extensions of time for appeal for good cause are required." (*Ibid.*)

True enough, *Gonzales* acknowledged that the finality provision of section 19575 addresses "the concern of an employer to know whether or not an employee has been lawfully terminated, so that proceedings to replace that employee may be instituted," but held that the employee had nonetheless established reasons for equitable relief. (*Gonzales*, *supra*, 76 Cal.App.3d at p. 367.) CAL FIRE claims this demonstrates that section 19575's finality "is clearly intended to benefit the employer and thus may be waived by the employer" under Civil Code section 3513 [anyone may waive advantage of law "intended solely for his benefit"]. But just because section 19575 confers a

23

benefit on employers does not mean that its finality provisions have no effect on them. CAL FIRE claims that "the finality provisions of section 19575 have never been construed to benefit employees," but the effect of these provisions is a matter of first impression.

CAL FIRE further argues that if an employee is permitted under *Gonzales* to circumvent the finality of an adverse action by establishing good cause, "the good cause exception to section 19575 should be equally available to both employees and employers." We disagree. Section 19575 provides that an employee has 30 calendar days to take an action (file an appeal to the Board), and *Gonzales* establishes the employee's ability to show good cause to extend that period. (*Gonzales*, *supra*, 76 Cal.App.3d at p. 367.) In *Gonzales*, it was undisputed that the employee had established good cause for filing an appeal six days late because there was a breakdown in communication between him and his attorney, and "they were both laboring under the strain of major criminal proceedings." (*Id.* at p. 366.) An employer is differently situated because by the time an adverse action has become final, the agency has already taken affirmative action against its employee by complying with section 19574 and affording an opportunity for a *Skelly* hearing.

Furthermore, even if we were to assume that an employer may set aside a final adverse action upon a showing of good cause, and that CAL FIRE preserved its right to do so here, we disagree with CAL FIRE's claim that it "had more than sufficient good cause to withdraw and revise the adverse actions" against

24

the firefighters.  CAL FIRE argues that it revised the original adverse actions to include additional facts, causes of action, and evidence, and it claims that the original actions were "too lenient given the dishonesty inherent in the appellants' misconduct." This argument fails to prove good cause; it mostly just describes what actions the agency took after it withdrew the previous notices.

As for the reason for the delay, CAL FIRE says it would have been reasonable to take into consideration the negative publicity the agency received about the firefighters' original discipline, as the ALJ concluded in denying the firefighters' motions to dismiss.  To be sure, in *In the Matter of the Appeal by M.M.* (1995) SPB Dec. No. 95-01,[5] the Board concluded that in considering the appropriate discipline, an employer may consider whether the employee's misconduct, "if known to the public, could only subject the [employer] to discredit."  But that was a consideration for imposing discipline in the first instance, not for withdrawing discipline that had already become final.

We also disagree with CAL FIRE that our interpretation of section 19575 will "lead to absurd results."  The agency claims that if employers are barred from withdrawing an adverse action after it becomes final, employers will be unable to withdraw a

---

[5] Although *M.M.* was cited by the ALJ in denying the firefighters' motion to dismiss, it is not included in the record on appeal.  The court takes judicial notice of the decision on the court's own motion.  (Evid. Code, §§ 451, subd. (a) [mandatory judicial notice of decisional law of the state]; 459, subd. (a) [reviewing court shall judicially notice each matter trial court was required to notice under § 451].)

final adverse action "even if the employer discovers new facts warranting revision of the disciplinary action." But there is nothing "absurd" about expecting an employer to conduct a thorough investigation about alleged misbehavior before an adverse action becomes final. And our conclusion says nothing about an employer's ability to discipline an employee for new facts that constitute their own wrongdoing. Finally, nothing in our decision prevents an employer from seeking to amend a notice of adverse action to include additional detail *before* an employee's appeal is submitted to the Board for decision (§ 19575.5; *E.W.*, *supra*, SPB Dec. No. 98-1230.)

In sum, we agree with the firefighters that the discipline against Chapin and Michels became final under section 19575 because they did not appeal their discipline to the Board within 30 days of its imposition. And because their discipline was final, CAL FIRE was not permitted to withdraw the notices of adverse action and serve new and different notices.

### 4. CAL FIRE Was Permitted to Withdraw the Notice of Adverse Action That Was Not Final.

Our analysis is different, however, for Schonig, who appealed the first notice of adverse action to the Board. His discipline thus was not final under section 19575 when CAL FIRE served him with the new notice of adverse action. Under section 19575.5, "[a]t any time before an employee's appeal is submitted to the board or its authorized representative for decision, the appointing power may with the consent of the board or its authorized representative serve on the employee and file

26

with the board an amended or supplemental notice of adverse action." The firefighters argue that this section is inapplicable here because CAL FIRE did not secure the consent of the Board before withdrawing its original notice and sending a new one. (See also Board rule 52.8(b) [chief ALJ "may require" showing of good cause before granting request to amend pleading].) But the Board impliedly gave its consent to withdraw the original notice and serve a new one when the ALJ denied the motions to dismiss, and the firefighters do not point to any statutory prohibition against such a process.

## III.   DISPOSITION

The trial court's order denying appellants' petition for a writ of mandate is affirmed in part and reversed in part.

The portion denying Schonig's petition for a writ of mandate is affirmed.

As for the portion of the order covering appellants Chaplin and Michels, the order is reversed. The trial court is directed to enter a new and different order granting Chaplin and Michels's petition for a writ of mandate and to direct the Board to vacate its April 12, 2016 order as to Chaplin and Michels and to reinstate the notices of adverse action dated January 26, 2015, for Chaplin and Michels.

Each party shall bear their own costs of appeal.

_____

Humes, P.J.


We concur:



_____

Margulies, J.



_____

Banke, J.





*Chaplin et al. v. California State Personnel Board*  A155107

28

Trial Court:

Superior Court of the City and County of San Francisco

Trial Judge:

Hon. Harold Kahn

Counsel for Plaintiffs and Appellants:

Gary M. Messing, Lina Balciunas Cockrell; Messing Adam & Jasmine LLP

Counsel for Defendant and Respondent:

Alvin Gittisriboongul, Dorothy Bacskai Egel; State Personnel Board

Counsel for Real Party in Interest and Respondent:

Frolan R. Aguiling, Linda A. Mayhew, Jennifer Pearson, David M. Villalba; Department of Human Resources, State of California

*Chaplin et al. v. California State Personnel Board* A155107